IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**KEITH HARRIS,**

**Plaintiff,**

v.

**DENNIS KUBA and
EDWARD MUZZEY,**

**Defendants.**                                                  No. **03-CV-0238-DRH**

### MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I. Introduction and Background

Pending before the Court is Defendants' motion for summary judgment (Doc. 29). Plaintiff opposes the motion (Doc. 36). Based on the pleadings, the applicable law and the following, the Court grants Defendants' motion for summary judgment.

On April 15, 2003, Keith Harris filed this two-count complaint against Dennis Kuba and Edward Muzzey pursuant to **42 U.S.C. § 1983** for violations of the Fourteenth Amendment (Doc. 1). In his complaint, Harris alleges that officers Kuba and Muzzey withheld exculpatory evidence from the prosecution and his defense attorney which resulted in his wrongful conviction and imprisonment. Harris also alleges that Kuba and Muzzey were engaged in a civil conspiracy to convict him of a

crime that he did not commit and to deny him of his constitutional rights. Specifically, Harris claims that he "was falsely charged and wrongfully convicted of the December 4, 1978 armed robbery and attempted murder which occurred at the Shell gasoline station in Caseyville, Illinois – a crime that he did not commit. Following his wrongful conviction, Mr. Harris was sentenced to 50 years in prison. He was incarcerated for a period in excess of twenty-two years. Harris was released from prison on or about May 1, 2001. He was pardoned by Illinois Governor George Ryan on the ground of actual innocence on January 10, 2003. The Governor further ordered that Keith Harris' wrongful conviction be expunged." (Doc. 1; p. 2, ¶ 3).

The complaint further alleges the following facts. On December 4, 1978, a Shell Gasoline station in Caseyville, Illinois was robbed. During the robbery, an employee of the gas station, Mark Resmann, was shot multiple times. Harris was charged with the crime. Both Kuba and Muzzey were the police officers assigned to investigate the crime. Harris alleges that both Kuba and Muzzey collected evidence at the crime scene that established his innocence. Harris further alleges that Kuba and Muzzey failed to bring the exculpatory evidence to the attention of the St. Clair County, Illinois State's Attorney who was responsible for his prosecution.

Harris contends that the victim of the armed robbery viewed multiple photographic lineups, identified other individuals as the perpetrator and failed to identify Harris as the perpetrator. Harris also contends that Kuba forced him to participate in an improper lineup, and as a result, the victim identified him as the perpetrator. On May 2, 1980, the jury convicted Harris of the charges brought

against him. Thereafter, the trial court sentenced Harris to 50 years in prison.

Further, Harris maintains that after his conviction Kuba and Muzzey became aware of further exculpatory evidence that even more clearly established his innocence. Harris maintains that in early September 1980 two individuals confessed to committing the armed robbery at the Shell station.

On December 17, 2003, the Court denied Defendants' motion to dismiss (Doc. 17). Thereafter, Defendants filed a motion for summary judgment on December 22, 2004 (Doc. 29). Defendants argue that they are entitled to summary judgment because Plaintiff has failed to prove the following: that Muzzey had personal involvement or responsibility for the investigation; that the investigator assigned to the file, Kuba, did not turn over the information; that the State's Attorney did not have in his possession the evidence which Harris claims was exculpatory; that Harris' claims relating to the line-up which were presented to the Court at a suppression hearing are not time barred; and that Harris' claims relating to testimony presented by the Defendants at the clemency hearing, a quasi judicial forum, are barred by testimonial immunity. Defendants further argue that they are entitled to qualified immunity as due process does not create a cause of action against them for post conviction conduct. Alternatively, Defendants argue that they presented the post trial information to the State's Attorney and/or the State's Attorney obtained the information from other sources and therefore Harris has failed to demonstrate a violation of his due process rights.

In his response to the summary judgment motion, Harris narrowed the

theory of his case to two issues: (1) that Kuba failed to turn over exculpatory evidence to the State's Attorney regarding the Mexico City Café crime and; (2) that after his trial but prior to his motion for a new trial being heard, both Kuba and Muzzey provided false information to prosecutors regarding a personal relationship between Harris and Davis and Holman (Doc. 36).

## II. Facts

Harris was charged and convicted for the December 4, 1978, armed robbery and attempted murder at a Shell Gas Station in Caseyville, Illinois ("the Shell station crime"). Harris was released from prison on or about May 1, 2001, following a determination by the court that the penalty statutes under which he was sentenced violated the law. On January 10, 2003, Harris was granted a full pardon by then Illinois Governor George Ryan. The pardon was granted on the grounds that Harris was innocent of the crime.

The investigation of the Shell station crime was assigned to Kuba. As an investigator, it was not Kuba's responsibility to process the crime scene. The crime scene was processed by Alva Busch, an Illinois State Police crime scene technician. Kuba had never heard of Harris prior to the investigation of the Shell station crime. Harris was not a target of the investigation when it began.

Resmann, the victim of the Shell station crime, participated in about eight different lineups. The lineups included both picture and in person lineups. In December 1978, Resmann was presented four lineups; none of which contained Harris. On December 4, 1978, Resmann indicated that Winford Stokes and Earl

Davis looked similar to the perpetrators. Later that same day, Resmann was shown another photographic lineup that included a photograph of Harris and he did not identify Harris as being involved in the crime. Harris participated in a total of two lineups in relation to the Shell station crime. In a February 1, 1979 lineup, Resmann identified Harris as the shooter. When Kuba conducted the first lineup with Harris there was a representative from the public defender's office present as a witness. Harris also participated in a lineup where the victim, Nicholas Rangel, of another armed robbery and shooting, the Mexico City Café crime, identified Harris as the perpetrator.

   The fingerprints taken at the scene were submitted to the lab for comparison identification. The lab personnel who examined the fingerprints indicated that the prints were unsuitable for comparison. This information was conveyed to the State's Attorney. Kuba reviewed the State's Attorney's file and it contains a lab report on the fingerprints. Harris has no knowledge as to whether the fingerprint information had been communicated to his attorney or to the State's Attorney who prosecuted him.

   The Shell station crime was linked to two other crimes by ballistics evidence. Specifically, lab reports indicate that the gun used in the Shell station crime had also been used in the following crimes: (1) Perfect Circle Donut Shop that occurred on December 4, 1978; and (2) Mexico City Café armed robbery and murders that occurred on December 21, 1978. Harris does not know if the information about the shells recovered from the Shell station crime scene was ever

communicated to the State's Attorney. Harris alleges that Kuba failed to bring to the State's Attorney attention evidence that established multiple crimes could be connected together based upon the shells recovered from the scenes. Harris has never talked to the State's Attorney at any time about his criminal case.

Harris does not have direct knowledge as to what information was provided by Kuba to the State's Attorney or even what is contained in the documents.

Prior to the criminal trial, Harris' attorney moved to suppress the identification of Harris by Resmann. In support of his motion to suppress, Harris called and examined Kuba, Gerald Johnson and Resmann. Harris' counsel moved to suppress the identification based upon the allegedly suggestive nature; the discrepancy alleged in the description of Harris given by Resmann; and that multiple line-ups presented to Resmann including photographs of the line-ups where Harris was not selected. The trial court denied Harris' motion.

During his criminal trial, Resmann identified Harris as the shooter. Harris did not testify as a witness at his criminal trial.

Harris appealed his conviction to the Illinois Fifth District Appellate Court. One of the arguments Harris raised on appeal was that the lineup was improper. Harris petitioned the trial court, the Appellate Court and the Illinois Supreme Court for a new trial based on the existence of new evidence or exculpatory evidence. The Appellate and Supreme Courts denied Harris' motions.

After he was convicted, Harris claims that Kuba and/or Muzzey became aware that two individuals, Girvies Davis and Ricky Holman, had confessed to the

Shell station crime. Within days after receiving Davis and Holman's confession, Kuba presented the confessions to the State's Attorney. However, Resmann identified a number of inconsistencies with the confessions and the details given by Davis and Holman. Resmann also viewed two live lineups with Davis and Holman and was firm that they were not the persons who had robbed and shot him.

Harris requested a new trial based upon the confessions of Davis and Holman. Harris contends that Kuba and Muzzey falsely told prosecutors that Harris and Davis were associates. Despite this new information, the court denied Harris' petitions for new trial and to overturn the conviction. Harris appealed the denial of the motion.

The Appellate Court denied Harris' petition for a new trial based on the newly discovered evidence that Davis and Holman had committed the crime. The Appellate Court found that there were fundamental inconsistencies in the confessions which weakened their value to a point well below that of which would have influenced or changed the result of a new trial. Further, the Appellate Court noted that one of the arguments being advanced by co-defendant Lawrence was that Harris' twin brother, Kenneth, had been called as a witness and that co-defendant Lawrence implied that it may have been Harris' twin brother who committed the crime. The Appellate Court also noted that Harris' counsel during the trial implied that Harris was innocent and that Resmann, the eye-witness, had misidentified him as his twin brother.

### III. Summary Judgment

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c)**; ***Wyatt v. UNUM Life Insurance Company of America*, 223 F.3d 543, 545 (7th Cir. 2000);** ***Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997);** ***See also Chelates Corp. v. Citrate*, 477 U.S. 317, 322 (1986))**.  The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law.  ***Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999)**.  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant.  ***Schneiker v. Fortis Insurance Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000);** ***Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999)**.

In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial.  ***EEOC v. Sears, Robuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000)**.  No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted...." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)**.  **Accord *Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996), cert. denied, 117 S. Ct. 683 (1997);** ***Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178**

**(7th Cir. 1994)**.

## IV.  Analysis

In order to state a claim under **42 U.S.C. § 1983**, Harris must establish that Defendants were acting under color of law when they deprived him of a federal right.  ***Ineco v. City of Chicago*, 286 F.3d 994, 998-99 (7th Cir. 2002)**.  In ***Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001)**, the Seventh Circuit defined the contours of a § 1983 claim for a violation of his due process claims based on allegations that the plaintiff did not receive a fair trial because the investigating officers deliberately withheld material exculpatory evidence from prosecutors. ***Newsome*, 256 F.3d at 752 (citing *Brady v. Maryland*, 373 U.S. 83 (1963))**. Thus, inherent in a successful § 1983 due process claim under ***Newsome*** is proof that the officers (and thus, derivatively, the prosecutors) violated the rule in ***Brady***. Indeed, the Seventh Circuit clarified that the ***Newsome*** rule links an officer's failure to disclose exculpatory evidence with the prosecutor's ***Brady*** obligations.  ***Gauger v. Hendle*, 349 F.3d 354, 360-61 (7th Cir. 2003)(finding, however, that Gauger's extension of *Brady* to his dues process claim "difficult to even understand" and rejecting Gauger's efforts "to make every false statement by a prosecution witness the basis for a civil rights suit")**.  Thus, the Court focuses on ***Brady*** as the nexus of Harris' due process claim.

Under ***Brady***, the government in a criminal prosecution must turn over to the defense potentially exculpatory evidence.  **Accord *United States v. Bagley*,**

**473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (*Brady* applies to impeachment evidence); *United States v. Agurs*, 427 U.S. 97 (1976) (*Brady* applies even in absence of request for the evidence by the accused); *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2003)**. *Brady* is founded upon the most basic of constitutional guarantees to a person accused of a crime: a right to due process of law and a fair trial. Very simply, in our system of criminal justice, the government is not entitled to send a person to prison while it conceals from the accused any evidence that is material and tends to show he is not guilty. Although "the attorney for the sovereign must prosecute the accused with earnestness and vigor, he must always be faithful to his client's overriding interest that 'justice shall be done.' He is the 'servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.' " **Agurs, 427 U.S. at 110-11 ( quoting *Berger v. United States*, 295 U.S. 78, 88, (1935))**.

A *Brady* violation occurs when the government withholds evidence that, had it been disclosed, creates a reasonable probability that the results of the trial would have been different. **Tadros, 310 F.3d at 1005.** A *Brady* claim has three essential elements. First, the evidence in question must be favorable to the accused, either because it is exculpatory or because it tends to impeach the credibility of a prosecution witness. Second, the evidence must have been suppressed by the prosecution, either willfully or inadvertently. The petitioner need not show that the prosecutor intentionally suppressed the information. **See Agurs, 427 U.S. at 110**

(**Brady violation depends on "the character of the evidence, not the character of the prosecutor"**). Third, prejudice must have resulted, which means the petitioner must show "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Strickler, 527 U.S. at 280 (quoting Bagley, 473 U.S. at 682)**. The question of prejudice is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." **Id. at 288 (quoting Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995))**. The reasonable probability test is not a sufficiency of the evidence test. A defendant need not show that no reasonable juror *could* convict, **see Kyles, 514 U.S. at 434-35**, but that the undisclosed information, when considered in light of all the evidence at trial and newly available evidence, undermines confidence in the outcome of the trial. In making this determination, the court must consider the undisclosed information item by item, but must also consider the cumulative effect of all the suppressed evidence, including the effect on the defendant's trial preparation or presentation. **See id. at 436-37, 115 S.Ct. 1555; Bagley, 473 U.S. at 683**.

First, Harris argues that Kuba withheld exculpatory evidence prior to trial. Specifically, Harris contends that Kuba had evidence in his possession that would have cast a doubt on Harris' guilt: that Kuba definitively knew that Harris did not commit the Mexico Café crime. Harris was a suspect in this crime also and the Illinois State Police investigated Harris' whereabouts during the time that crime was

committed. At the time of the crime, Harris was at work at Rockwell International. The second piece of evidence that Harris contends that Kuba withheld was the fact that one of the victims of the Mexico Café crime identified Harris as the suspect. On January 2, 1979, Nicholas Rangel participated in a physical line up and he identified Harris as the perpetrator. Harris argues that given the fact that he could not have been at the Mexico City Café crime scene, this piece of evidence is significant because it shows that someone who looked like Harris must have been involved in the Mexico Café crime. Harris maintains that this is very significant when the same gun was used in both crimes. Harris believes that this piece of evidence could have reasonably caused the jury to question Resmann's identification of Harris and therefore cast doubt on his guilt. The third piece of evidence that Harris contends that Kuba withheld was that someone else confessed to the Mexico City Café crime. Harris maintains that on January 30, 1979, Randolph Chamberlain admitted to committing the Mexico City Café crime. Harris asserts that if Chamberlain was involved in the Mexico City Café crime, there is strong likelihood that he was involved in the Shell Station crime and that if he had known this information at the time he was tried, he certainly could have cast doubt on his guilt.

As to Harris' claim that Kuba withheld exculpatory evidence in the pre-trial phase regarding the Mexico City Café crime, the Court finds that Harris has failed to sustain his burden of proving that the evidence was suppressed or material.

Three concepts are at play in determining whether the government "suppressed" evidence: knowledge, possession and the availability of the information

to the defendant. The rule requiring prosecutors in criminal proceedings to disclose information is limited to information known to the prosecution. ***See United States v. Earnest*, 129 F.3d 906, 910 (7th Cir. 1997);** ***Mendoza v. Miller*, 779 F.2d 1287, 1297 (7th Cir. 1985)(citing *Giglio v. United States*, 405 U.S. 150 (1972))**. Thus, there is "no affirmative duty on the part of the government to seek information not in its possession when it was unaware of the existence of that information." ***Earnest*, 129 F.3d at 910;** ***Tadros*, 310 F.3d at 1005**. Furthermore, evidence is not "suppressed" in the ***Brady*** sense when the defendant has access to the evidence before trial by the exercise of reasonable diligence. ***Earnest*, 129 F.3d at 910;** ***United States v. Romo*, 914 F.3d 889, 899 (7th Cir. 1990)(noting that defendant's trial counsel could have subpoenaed local police agency, including local custodian of records, to find potentially exculpatory material and that counsel's strategic decision or mere failure to do so would not be imputed to prosecutors as a *Brady* violation)**. That said, however, the Seventh Circuit has found it "improper for a prosecutor's office to remain ignorant about certain aspects of a case or to compartmentalize information so that only investigating officers, and not the prosecutors themselves, would be aware of it." ***United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996)**.

        The uncontradicted evidence is that Kuba did not work the Mexico City Café crime, except in a very minor role. That case was assigned to a different detective who was responsible for the investigation. He would not have had any more

of an intimate knowledge of it than the prosecutor in the sense that all local law enforcement personnel would have been aware of such notorious crimes with which their respective offices are involved. Thus, the Court finds that this evidence was not suppressed and does not support a **Brady** violation.

Moreover, Kuba's opinion about Harris' ability to have committed the Mexico City Café robbery is not evidence and it is not relevant or material as to the Shell station crime. Assuming that it was relevant, this evidence at the most establishes that someone who looked like Harris was seen in two locations around the same time. It does not demonstrate that Harris was innocent of the Mexico City Café crime.

Harris also contends that because the Mexico City Café crime witness Rangel identified Harris and Lawrence as committing that crime, this evidence would have been material and useable by him in his criminal trial in that if the identification in the Mexico City Café crime was unreliable so would be Resmann's identification of Harris as the shooter of the Shell station crime. The Court rejects this argument as this evidence is not material to the Shell station crime.

Lastly, as to Chamberlain's confession to the Mexico City Café crime, the Court finds that this evidence is not material to the Shell station crime. The evidence contained in the record as to Chamberlain killing people is found at Defendant's Exhibit 8. Exhibit 8 is an investigative report of a January 30, 1979 interview of Jacqueline Smith, the girlfriend of Harris' co-defendant Lawrence. Exhibit F states that Harris, Lawrence and Chamberlain were all known associates. The exhibit also

reveals that Smith overheard Lawrence talking about how Chamberlain had killed two people and that she heard Lawrence and Harris talking about a .22 Caliber rifle. The Court does not find that this evidence would have been material or helpful to Harris in his criminal trial. Harris has not demonstrated that this evidence creates a reasonable probability that the result of his criminal trial would have been different. Thus, the Court finds that Harris has not established a due process violation against Kuba for withholding exculpatory evidence.

Next, Harris contends that Kuba and Muzzey provided prosecutors with false information regarding Harris' relationship with Davis and Holman. Harris contends that prior to the hearing on the motion for new trial, Alva Busch attended a meeting with Kuba and Muzzey in which they advised the prosecutor that Harris was an associate of Davis and that could explain how both men could have used the weapon in different crimes. Harris contends that this information was not true. Harris had never meet Davis prior to being convicted. As such, Kuba and Muzzey lied to prosecutors.

As to Harris' claim that Kuba and Muzzey provided false statements to the State's Attorney based upon a personal relationship between Harris and Davis and Holman, the Court finds that Harris has not established a due process claim. First, Harris' affidavit only goes to Holman as to a personal relationship. The affidavit is self serving as to the issue of having met Davis. Further, there is no evidence of an intentional false statement. Secondly, in order for this information to be material for the purposes of this lawsuit, there would have to be evidence that

the State's Attorney relied on such false statements, assuming they were false. Harris has not submitted any evidence as to why the State's Attorney decided to oppose the questioned confessions. At the hearing, the State's Attorney did not have witnesses testify about the relationship of Harris and Davis and Holman. In examining the transcript of the hearing for Harris' motion for new trial, this Court does not see any reliance by the State's Attorney on a personal relationship between Harris and Davis and Holman. In addition, the Appellate Court denied the motion for new trial because it found discrepancies in the confessions of Davis and Holman. It did not base its reasoning on whether or not Davis and/or Harris may have had some connection prior to Harris' conviction. Thus, the Court concludes that Kuba and Muzzey are entitled to summary judgment on Harris' due process claim regarding false statements. Therefore, the Court finds as a matter of law that Harris failed to meet his burden of proof to withstand summary judgment. To put it plainly, the discovery is closed and Plaintiff does not have the evidence to prove his theories of the case. The Governor has declared him innocent and he must find someone upon whom he can place actionable blame. As a matter of law, that cannot be the two officers at bar.

### V. Conclusion

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment (Doc. 29). Further, the Court **DENIES** Harris' motion to strike (Doc. 46). The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Dennis

Kuba and Edward Muzzey and against Keith Harris.

**IT IS SO ORDERED.**

Signed this 11th day of July, 2005.

                        <u>/s/    David RHerndon</u>
                        **United   States   District Judge**